**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 25-25695-Civ-BECERRA/TORRES

EDUARDO CUESTA,

     *Plaintiff,*

v.

HOLIDAY CVS, LLC d/b/a
CVS PHARMACY Y MAS (Store #3706),

     *Defendant.*
_____/

### *ORDER GRANTING PLAINTIFF'S MOTION TO REMAND*

This pending motion [D.E. 7] presents a common removal question: when a plaintiff's initial disclosures identify a specific dollar figure exceeding the federal diversity threshold, does that document constitute an "other paper" under 28 U.S.C. § 1446(b)(3) that triggers the thirty-day window to remove? As we discuss below, the answer is yes at least based on the circumstances in this case. And because Defendant waited nearly seven months after receiving that paper before filing its Notice of Removal, remand is required based on Defendant's untimely removal.

After fully considering the supporting record, including Plaintiff's motion as well as Defendant's Response in opposition. [D.E. 10], the motion to remand is Granted.

## I.   BACKGROUND

On June 3, 2022, Plaintiff Eduardo Cuesta visited CVS Pharmacy Store #3706 ("CVS") on a rainy South Florida afternoon. A low-pressure system that would become Tropical Storm Alex had moved across the region, bringing historically heavy precipitation to Miami-Dade County. Cuesta walked through the corner entryway of the store and slipped on wet, slick pavement. CVS allegedly had no rubber mats deployed despite the weather, and had months earlier removed a metal handrail it once bolted to that entryway for exactly this purpose. Cuesta fell and suffered injuries to his cervical spine, thoracic spine, thorax, lumbar spine, left wrist, right hip, and both knees. By July 2022, a physician had assessed a combined whole-body impairment rating of four percent and recommended multiple future surgical procedures.

Three years later, on March 13, 2025, Cuesta filed suit in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. His complaint alleged negligence arising from the slip and fall. Plaintiff's counsel, as an officer of the court, signed the state court Civil Cover Sheet and certified that the estimated value of the claim exceeded $100,000. Defendant CVS was served through its registered agent on March 19, 2025. Under 28 U.S.C. § 1446(b)(1), CVS's first "window" to remove, based on the initial pleading and Civil Cover Sheet, closed thirty days later, on April 18, 2025.

CVS did not remove. One month later, on May 19, 2025, Plaintiff served his state court initial disclosures on CVS by email. Those disclosures itemized Plaintiff's claimed damages as follows: past medical expenses of $18,325.20; and recommended

future medical care, including orthopedic surgery, pain management, and physical therapy, totaling an estimated cost range of $54,500 to $125,200. The single total figure stated in the disclosures was $143,525.20, an amount nearly twice the $75,000 federal diversity threshold. CVS's second window to remove, triggered by receipt of the initial disclosures as "other paper" under § 1446(b)(3), closed thirty days later, on June 18, 2025.

Again, however, CVS did not remove by that date. After many more months passed, on November 6, 2025, Plaintiff served his Answers to CVS's Requests for Admissions, in which Plaintiff admitted the amount in controversy exceeded $75,000. On December 5, 2025, thirty days later and one hundred seventy days after the June 18 deadline, CVS finally filed its Notice of Removal and elected to proceed in federal court.

Plaintiff then timely moved to remand the action back to state court on the argument that removal was untimely on various grounds. [D.E. 7]. CVS filed its opposition [D.E. 10], arguing that removal was timely as the first instance when diversity jurisdiction could be sought was after it received the answers to the admissions requests, and not before. The motion is ripe for disposition.

## II.   ANALYSIS

### A.   *Applicable Principles*

Federal courts are courts of limited jurisdiction and may hear only those cases permitted by the Constitution or federal statute. *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1260-61 (11th Cir. 2000). They are "empowered to hear only those cases

within the judicial power of the United States as defined by Article III of the Constitution," and which have been entrusted to them by a jurisdictional grant authorized by Congress. *Taylor v. Appleton,* 30 F.3d 1365, 1367 (11th Cir. 1994).

The three recognized bases for subject matter jurisdiction are: (1) specific statutory grant; (2) federal question under 28 U.S.C. § 1331; and (3) diversity of citizenship under 28 U.S.C. § 1332(a). *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017). When a case is removed to federal court on one of these bases, the Court must follow the rule that the plaintiff is the master of her complaint and may choose her forum. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

A defendant may remove a civil action filed in state court to federal court under 28 U.S.C. § 1441. But the removing party bears the burden of demonstrating that federal jurisdiction exists. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998). If removal is challenged, the court determines whether jurisdiction existed at the moment the notice of removal was filed. *Poore v. American-Amicable Life Ins. Co.*, 218 F.3d 1287, 1290-91 (11th Cir. 2000).

Removal statutes are thus strictly construed. *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013). Courts "apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Id.* (quotation marks and citation omitted). A federal court has not only the power but the obligation to inquire into the existence

of jurisdiction whenever the possibility of its absence arises. *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 n.4 (11th Cir. 1999).

If a case is removed on diversity grounds (as it is here) under section 1332(a), there must be (1) complete diversity between the parties and (2) there must be an amount in controversy that exceeds $75,000. *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs"); *see also Matrix Z, LLC v. Landplan Design, Inc.*, 493 F. Supp. 2d 1242, 1245 (S.D. Fla. 2007) (clarifying that diversity jurisdiction depends on the citizenship, not merely the residence, of each party). In meeting the burden of establishing the amount in controversy, the removing defendant must establish by "'[t]he greater weight of the evidence, . . . [a] superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other.'" *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1209 (11th Cir. 2007) (quoting Black's Law Dictionary 1220 (8th ed. 2004)). To reiterate, remand must follow if the removing defendant fails to establish jurisdiction because removal statutes are strictly construed and all ambiguities are resolved in favor of remand. *See, e.g., Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

### 1. *Timeliness of Removal*

The rule is clear that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through

service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3); *see also Lowery*, 483 F.3d at 1212-13 (establishing the procedural timelines for removal by requiring defendants to act within thirty days of receiving either the initial pleading or a later document that first makes the case removable).

Section 1446(b) creates two sequential thirty-day deadlines for removal. The first deadline (sometimes referred to as a "removal window" under § 1446(b)(1)) runs from the defendant's receipt of the initial pleading. If the initial pleading does not disclose a ground for removal, a second deadline arises under section 1446(b)(3): a notice of removal may be filed "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

The initial operative phrase that governs timeliness of removal is "from which it may first be ascertained." The Eleventh Circuit has interpreted this language to mean that the removal clock under section 1446(b)(3) is triggered only when the document in question "unambiguously establish[es] federal jurisdiction." *Lowery*, 483 F.3d at 1213. The burden remains on the removing defendant; ambiguity in the triggering document does not extend the defendant's deadline for removal. Rather, it resolves in favor of remand. *Burns,* 31 F.3d at 1095 ("uncertainties are resolved in favor of remand"); *see, e.g., Coker v. Amoco Oil Co.,* 709 F.2d 1433 (11th Cir.1983)

(when defendant removes alleging nondiverse defendant was joined to defeat diversity, if there is a chance plaintiff will recover against non-diverse defendant, case should be remanded).

The next critical phrase in the statute as to the second 30-day deadline for removal is the term "other paper." This language has no explicit statutory definition, but its meaning is now well understood. It is settled that an "other paper" is any document generated within the state court proceeding, either through discovery, pleadings, or formal service, that results from the voluntary act of the plaintiff and provides the defendant with notice that the case has become removable. *Addo v. Globe Life & Acc. Ins. Co.*, 230 F.3d 759, 761-62 (5th Cir. 2000). Hence, when removal is based on "other paper," the defendant must satisfy three elements: "there must be (1) 'an amended pleading, motion, order or other paper,' which (2) the defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can 'first ascertain' that federal jurisdiction exists." *Lowery,* 483 F.3d at 1213 n.63 (quoting § 1446(b)). Moreover, in the context of § 1446(b)(3) removals, "the documents received by the defendant must contain an unambiguous statement that clearly establishes federal jurisdiction." *Id.* And in this context the "other paper" must be received after the initial pleading; it cannot predate the complaint. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010) ("[W]e conclude that any document received prior to receipt of the initial pleading cannot trigger the second thirty-day removal period.").

Finally this "voluntary act" requirement prevents defendants from engineering their own section 1446(b)(3) trigger; it must be the plaintiff who supplies the paper that moves the needle. *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992); *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 761 (11th Cir. 2010) ("The traditional rule is that only a voluntary act by the plaintiff may convert a non-removable case into a removable one.") (citing *Insinga v. LaBella,* 845 F.2d 249, 252 (11th Cir. 1988) (explaining the judicially created "voluntary-involuntary" rule that applies in diversity cases); *Weems v. Louis Dreyfus Corp.,* 380 F.2d 545, 547 (5th Cir. 1967)).

### 2.      *The types of documents that qualify as "Other Paper"*

As to what types of documents qualify: demand letters qualify. *Addo*, 230 F.3d at 762. Admissions responses qualify. *Wilson v. Gen. Motors Corp.*, 888 F.2d 779, 782 (11th Cir. 1989). Deposition transcripts qualify. *Lowery,* 483 F.3d at 1212 n.62; *Sudduth v. Equitable Life Assurance Soc'y,* No. 07-0436-WS-C, 2007 WL 2460758, at *2 (S.D. Ala. Aug. 27, 2007); *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078 (10th Cir. 1999). Interrogatory answers qualify. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996). Expert reports qualify. *Gibson v. Clean Harbors Envtl. Servs., Inc.*, 840 F.3d 515, 521 (8th Cir. 2016). Even informal correspondence about damages can qualify. *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 74 (1st Cir. 2014).[1]

---

[1]      Documents that do not qualify include: court opinions in unrelated cases, *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 969 (8th Cir. 2007); pre-suit communications that predate the initial pleading, *Paros Props. LLC v. Colorado Cas.*

Given the breadth of the types of post-complaint documents that a plaintiff can provide to trigger removal, identifying the common features of these documents is critical. Circuits have articulated the triggering standard in slightly different terms, but they converge on the same core principle. The Eleventh Circuit asks whether the document provides an "unambiguous statement that clearly establishes federal jurisdiction." *Lowery*, 483 F.3d at 1213. The Fifth and Ninth Circuits ask whether the information in the document is "unequivocally clear and certain." *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002); *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021). The First Circuit asks whether the document provides "sufficient information to easily determine that the matter is removable." *Romulus*, 770 F.3d at 75; *New Hampshire v. 3M Co.*, 132 F.4th 556, 564 (1st Cir. 2025). The Seventh Circuit asks whether the document "affirmatively and unambiguously specifies a damages amount sufficient to satisfy the federal jurisdictional minimums." *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824 (7th Cir. 2013). And the Second Circuit asks whether the document "explicitly specifies the amount of monetary damages sought" or sets forth facts from which a necessary amount in controversy can be ascertained. *Cutrone v. Mortgage Elec. Registration Sys., Inc.*, 749 F.3d 137, 148 (2d Cir. 2014).

---

*Ins. Co.*, 835 F.3d 1264, 1268 (10th Cir. 2016); affidavits created by the defendant itself, *S.W.S. Erectors*, 72 F.3d at 494; and oral statements, which cannot trigger the statutory clock at all. *JHohman, LLC v. U.S. Sec. Assocs., Inc.*, 513 F. Supp. 2d 913, 916 (E.D. Mich. 2007).

The adjectives may vary, but these opinions all require a common feature: there must be a specific dollar figure that plainly exceeds the threshold, which can be found in a written document produced by plaintiff after the initial pleading. The Eleventh Circuit's "unambiguous statement" requirement does not impose a higher burden than the other circuits; it uses that phrase to distinguish between a document that communicates removability and one that merely suggests it. When the relevant figure in a written document is a single total that is nearly twice the threshold, no circuit would mistake it for anything less than "other paper" triggering removal. *See also Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir. 1996) ("The 'motion, order or other paper' requirement is broad enough to include any information received by the defendant, 'whether communicated in a formal or informal manner.'") (citations omitted).

### B.     *Whether the Civil Cover Sheet Triggered Removal*

The parties agree that complete diversity of citizenship exists: Plaintiff is a citizen of Florida; CVS is a Delaware limited liability company with its principal place of business outside Florida. No party disputes diversity. The only issue is timeliness based on the first occasion when the amount in controversy was reliably and unambiguously ascertainable.

Plaintiff argues that removal of this complaint was not timely on two grounds: first, the civil cover sheet unambiguously placed CVS on notice that the amount of controversy exceeded $100,000; and, second, even if the cover sheet did not qualify certainly Plaintiff's initial disclosures served early in discovery did the trick, where

the disclosures expressly identified the categories of damages being sought and pinpointing the damage figure to be $143,525.20.

We will start with the cover sheet issue. Plaintiff contends that, under section 1446(c)(3)(A), the civil cover sheet is information in the record of the state proceeding that should be treated as an "other paper" for purposes of determining whether a notice of removal was timely. There is plenty of support for Plaintiff's position, especially from the Middle District of Florida. *See, e.g., Soto Rios v. Wal-Mart Stores East, LP*, No. 8:22-cv-1089-AAS, 2022 WL 2384021, at *2 (M.D. Fla. July 1, 2022).

The Tenth Circuit, in fact, has treated the argument favorably and found that a civil cover sheet is "at least properly considered an 'other paper' under § 1446(b)(3)." *Paros Props.*, 835 F.3d at 1272-73. The rationale is straightforward. When plaintiff's counsel signs the civil cover sheet, she does so as an officer of the court, certifying the accuracy of the information therein "to the best of [her] knowledge and belief." *Power v. Lowe's Home Centers, LLC*, No. 3:23-cv-852-BJD, 2023 WL 10949098, at *3 (M.D. Fla. Sept. 29, 2023). That certification by an officer of the court "amounts to an assertion . . . on a matter of significant consequence." *Id.* (quoting *Paros Props.*, 835 F.3d at 1272–73). Where the cover sheet contains no ambiguity as to the amount in controversy, it should start the clock.

The Eleventh Circuit has not addressed this question directly, though plenty of circuit reasoning supports Plaintiff's view. A written representation of counsel from the inception as to the value of that case is per se reliable. *See Burns,* 31 F.3d at 1095 ("Every lawyer is an officer of the court. And, in addition to his duty of diligently

researching his client's case, he always has a duty of candor to the tribunal. So, plaintiff's claim, when it is specific and in a pleading signed by a lawyer, deserves deference and a presumption of truth. We will not assume—unless given reason to do so—that plaintiff's counsel has falsely represented, or simply does not appreciate, the value of his client's case. Instead, we will assume that plaintiff's counsel best knows the value of his client's case and that counsel is engaging in no deception. We will further presume that plaintiff's counsel understands that, because federal removal jurisdiction is in part determined by the amount of damages a plaintiff seeks, the counsel's choices and representations about damages have important legal consequences and, therefore, raise significant ethical implications for a court officer.") (vacating order of remand based on complaint's express demand of only $45,000 in damages).

But CVS argues that the civil cover sheet alone is insufficient without supplemental evidentiary support. Courts have sometimes accepted this position where the cover sheet's amount column is vague or plainly boilerplate. *See Ghadiri v. Rack*, No. 8:23-cv-1350-KKM, 2023 WL 8457403, at *3 (M.D. Fla. Nov. 7, 2023); *Mager v. Katz*, No. 21-62350-Civ-Ruiz, 2023 WL 3578989, at *3 (S.D. Fla. May 31, 2023). This cover sheet does not seem to fit that criteria.

But we should be hesitant in relying only on the cover sheet given that there is an argument that it is not actually a voluntary submission from counsel but instead an administrative task. In Florida, civil cover sheets are for procedural purposes only. *See, e.g., Bell v. Ace Ins. Co. of the Midwest*, No. 2:20-cv-309-JLB, 2020 WL 7396934,

at *3 (M.D. Fla. Dec. 17, 2020). The civil cover sheet states on its face that "[t]he estimated amount of the claim . . . is requested for data collection and clerical processing purposes only. *The amount of the claim shall not be used for any other purpose.*" *Id.* (emphasis added). "To give the state civil cover sheet a substantive effect for purposes of the removal statute . . . would contravene the Supreme Court of Florida's own rule prohibiting the use of information in the cover sheet for any purpose other than the State's collection of data." *Id.* (denying remand on timeliness grounds that was founded on civil cover sheet identifying $400,000 in damages).

Also, there is an argument that a civil cover sheet is never actually served on a plaintiff's counsel. It simply gets filed as part of the initial pleading. That raises an issue whether it satisfies the "service" provision of section 1446(b)(3). Moreover, the "second paragraph" of the statute contemplates other paper that follows the filing of the initial pleading. Read literally, this provision could not be talking about the civil cover sheet that is filed in advance of the pleading itself. So can a civil cover sheet ever amount to "other paper" under the statute? Maybe not. *See Carvalho,* 629 F.3d at 885 ("[W]e conclude that any document received prior to receipt of the initial pleading cannot trigger the second thirty-day removal period."); *Nieter v. Holiday CVS, L.L.C,* No. 2:24-CV-949-SPC-KCD, 2024 WL 4956662, at *1 (M.D. Fla. Nov. 1, 2024) (remanding action where amount in controversy was based on civil cover sheet and not the actual pleading or other subsequent paper) ("the civil cover sheet is not a verified pleading or material evidence on the amount in controversy").

The better view is persuasively set forth in Judge Corrigan's recent opinion that took a deep dive into this question. This analysis casts the civil cover sheet as an indication of removability but requires more. *Martinez-Lopez v. Bowden*, No. 3:23-CV-736-TJC-LLL, 2024 WL 1252381, at *3 (M.D. Fla. Mar. 25, 2024) ("[W]hen a civil cover sheet is the only evidence in addition to the generic conclusory allegations of nearly every personal injury complaint, this is not enough to satisfy the defendant's burden to demonstrate by a preponderance of the evidence that the amount in controversy is satisfied. . . . Defendants must point to some additional evidence [that], taken together with the civil cover sheet, establishes the amount in controversy.") (citation omitted).

We will take that cue and proceed with the second argument for remand: whether the initial disclosures that followed the filing of the complaint constitutes the "other paper" under the statute.

### C. *Plaintiff's Initial Disclosures Unambiguously Triggered Removal*

We hold that where the cover sheet certifies a specific dollar range and the initial disclosures subsequently provide an itemized total that confirms and quantifies the same figure, any lingering uncertainty is resolved. Those initial disclosures, that were served on CVS weeks later, provided an independent, unambiguous basis for setting the final 30-day removal deadline.

Recall that on May 19, 2025, Plaintiff served his state court initial disclosures on CVS by email. The disclosures identified one total: $143,525.20 in claimed damages, consisting of $18,325.20 in accrued past medical expenses and an estimated

$54,500 to $125,200 in recommended future surgical and rehabilitative care. The disclosures were signed by plaintiff's counsel, served through formal discovery channels, and accompanied by the service email confirming receipt. There is nothing vague or ambiguous about them.

As a result, courts in our circuit often rely on the initial disclosures as unambiguous written evidence triggering the removal deadline under section 1446(b)(3). *See, e.g., Ramos v. Walmart Stores E., L.P.*, No. 8:25-CV-3521-WFJ-CPT, 2026 WL 194220, at *2 (M.D. Fla. Jan. 26, 2026) ("Defendant Walmart was placed on notice that the amount in controversy exceeded $75,000, on December 2, 2025, the day it received . . . [the] initial disclosures, which detail Plaintiff's damages of $479,949.07. . . . Defendant's notice of removal filed on December 24 was timely because it falls within thirty days of the December 2 notice."); *Brown v. Cracker Barrel Old Country Store, Inc.,* No. 3:25-CV-698-WWB-MCR, 2025 WL 3900700, at *2 (M.D. Fla. Nov. 7, 2025) (concluding that a defendant had shown that the amount in controversy exceeded $75,000 through plaintiff's initial disclosures, which showed the plaintiff had accrued medical expenses of more than $100,000); *Guite v. State Farm Mut. Auto. Ins. Co.,* No. 2:25-CV-461-JES-KCD, 2025 WL 2109252, at *2 (M.D. Fla. July 29, 2025) (defendant carried its burden to show that the amount in controversy exceeded $75,000 by reference to plaintiff's initial disclosures, which reflected more than $150,000 in past medical bills and expenses); *Gerald v. Garrison Prop. & Cas. Ins. Co.,* No. 2:25-CV-254-SPC-NPM, 2025 WL 1222528, at *1 (M.D. Fla. Apr. 28, 2025) (plaintiff's initial disclosures, outlining accrued medical expenses of

more than $75,000, was sufficient notice to the defendant that the case had become removable).

In particular, if the initial disclosures show that the case is removable but a defendant waits until additional discovery to pull the section 1446(b) trigger, a case should be remanded for untimely removal. In a very recent case, for instance, Judge Steele reached that conclusion given that initial disclosures in a personal injury case identified more than $150,000 in medical expenses. *Avelo v. Sam's East, Inc.,* No. 6:25-CV-2229-JSS-RMN, 2026 WL 904703, at *3 (M.D. Fla. Apr. 2, 2026). Based on the plain text of section 1446(b), the court found that these "initial disclosures were sufficient to trigger the removal window, as they were part of the state court record and contained a 'clear statement of [her] damages.'" *Id.* The court ordered the case remanded for untimely removal given that removal did not occur until two months after the 30-day period triggered by the initial disclosures. *Id.* at *4.

The decisions from other circuits are in accord. For instance, in *New Hampshire v. 3M Co.*, the District of New Hampshire, later affirmed by the First Circuit, expressly held that initial disclosures are "other paper" under section 1446(b) that gave defendants unambiguous notice that removal (under section 1442(a)(1) (acting under color of federal authority)) was viable where the initial pleading arguably did not. 665 F. Supp. 3d 215, 235 (D.N.H. 2023), *aff'd,* 132 F.4th 556 (1st Cir. 2025) (removal of action more than 30 days after December 2021 initial disclosures was untimely).

A host of other cases rely upon initial disclosures as a pivot point for removal, so long as they clearly set forth the threshold amount in controversy. *See, e.g., Rivas v. SW Foam LP*, No. EP-09-CV-042-DB, 2009 WL 10699480, at *4 (W.D. Tex. Apr. 14, 2009) ("This other paper—Plaintiff's voluntarily produced discovery response—transformed Plaintiff's case into one over which a federal court clearly and unequivocally possesses original jurisdiction. . . . Specifically, employing simple math, Defendant was put on notice that Plaintiff sought well in excess of the jurisdictional threshold.") (denying motion to remand because initial pleading was ambiguous and removal 30 days after initial disclosures rendered it timely); *Golik v. Gen. Motors LLC*, No. 2:25-cv-6921-HDV, 2025 WL 3090758 (C.D. Cal. Nov. 4, 2025) (considering disclosures under California state procedure as "other paper"); *Mariscal v. Nissan N. Am., Inc.*, No. 2:24-cv-3668-RGK, 2024 WL 3086016 (C.D. Cal. June 20, 2024) (same); *Stiles v. Barnes Grp., Inc.*, No. 3:01-cv-2750-H, 2002 WL 1298734, at *3 n.4 (N.D. Tex. June 11, 2002) (finding plaintiff's initial disclosures to constitute "other paper"); *Carbaugh v. Home Depot U.S.A., Inc.*, No. 13-CV-02848-REB-MEH, 2014 WL 3631825, at *3 (D. Colo. July 23, 2014) (initial disclosures constituted "other paper" that permitted removal within 30 days of service).

The Eleventh Circuit has not had occasion to review an initial disclosure case per se, but certainly the circuit has long ago adopted the rule that any discovery response can qualify as "other paper" if the basis for federal jurisdiction is unambiguously included in that response. *See, e.g., Lowery,* 483 F.3d at 1212 n.62 (identifying several forms of discovery as constituting "other paper" including

admissions, interrogatories, and deposition testimony). An initial disclosure in state court is tantamount to a Rule 26 discovery device in federal court. The itemization of damages is a common feature in both, which is precisely the type of paper from a plaintiff's counsel, served on a defendant, that may unambiguously provide notice from which it can be "reasonably ascertained" that federal jurisdiction can lie, so long as the 30-day deadline does not elapse.

Here, the disclosure was not ambiguous. It followed up on the exceeding $100,000 calculation in the civil cover sheet with detailed facts: past medical expenses of $18,325.20; and recommended future medical care, including orthopedic surgery, pain management, and physical therapy, totaling an estimated cost range of $54,500 to $125,200. It calculated the minimum damages to the penny: $143,525.20. Having first been placed on notice of possible federal jurisdiction in the civil cover sheet, CVS by this point now had reliable verification that diversity jurisdiction could be sought in federal court. The 30-day clock began to run.

### D.      *CVS counter-arguments are unpersuasive*

Defendant contends these disclosures were insufficient to trigger section 1446(b)(3) because the future medical component consisted of a range ($54,500 to $125,200) rather than a precise single figure, and because the disclosures were unaccompanied by supporting medical records. Both positions are ultimately as weak as they appear at first blush.

Consider the logic. A plaintiff's specific disclosure of $143,525.20 in damages, broken down into past expenses of $18,325.20 and an anticipated surgical range of

$54,500 to $125,200, is according to CVS legally invisible for removal purposes because the future component is expressed as a range. But the lower bound of that range, combined with the conceded past expenses, equals $72,825.20. That categorical amount already approaches the jurisdictional threshold.

Now if we consider the midpoint of the future medical expense range that yields a total of $107,475.20. The total as disclosed is $143,525.20. At no point along this spectrum does the arithmetic fail to clear $75,000. CVS's position is the equivalent of saying that a speedometer showing a minimum reading of 85 miles per hour is insufficient to establish speeding, because it might also be showing 90. The range does not create uncertainty about whether the threshold is crossed; it only describes how far above the threshold the damages fall. And when you couple that the reasonable inference drawn from the civil cover sheet's declaration of damages in excess of $100,000, no reasonable person could be left with any lingering doubt.

The absence of supporting medical records in the initial disclosures is equally unavailing. Section 1446(b)(3) asks what the defendant could "first ascertain" removability from the document, not whether the document provided dispositive proof of damages. The question is whether a reasonable defendant, reviewing plaintiff's certified attorney disclosure of $143,525.20, could ascertain that the case was removable. The answer cannot seriously be "no." An attorney-certified damages figure of $143,525.20 is an unambiguous statement of what plaintiff claims. *See Lowery*, 483 F.3d at 1213. A defendant who reads that figure and concludes the case

might fall below $75,000 is not exercising sound legal judgment; it is exercising an option to delay.

This is also readily apparent in considering what "other paper" does not qualify. Documents that fail to trigger the clock share one feature: they do not specify a damages amount. A disclosure that lists the vehicle's mileage and location but no dollar total does not start the clock. *Golik,* 2025 WL 3090758, at *3. A disclosure that identifies medical treatment and repair records but no total does not start the clock. *Chavarin v. General Motors LLC*, No. 2:25-cv-6852-HDV, 2025 WL 3030875, at *4 (C.D. Cal. Oct. 29, 2025). An initial disclosure that describes "unspecified pain-and-suffering damages" does not start the clock. *Paque v. Galaxy Theatres, LLC*, No. 2:22-cv-2181-CDS, 2023 WL 3222584, at *4 (D. Nev. May 2, 2023) (remanding action for premature removal where disclosure did not sufficient set forth an amount exceeded the threshold). In each of these cases, the document lacked what made removability ascertainable: a reliable dollar figure.

The courts that have found disclosures sufficient share the opposite feature: a specific total. When the initial disclosures in *Robinson v. KLX, LLC* identified past medical expenses of $741,352.90, the court held they qualified as "other paper." 2023 WL 12036416, at *2 (D. Colo. Aug. 3, 2023) (granting motion to remand as untimely on alternative argument based on civil cover sheet). And when initial disclosures in *Gerald v. Garrison* identified accrued medical expenses of approximately $300,000, Judge Chappell in the Middle District of Florida held that plaintiff's "service of h[is] initial disclosures" triggered the thirty-day removal period. 2025 WL 1222528, at *1

(denying motion for remand on timeliness grounds because removal within 30 days of disclosures was proper).

The pattern holds, and the rule is clear for our purposes. A specific dollar figure in these initial disclosures that clearly exceeds the jurisdictional threshold constitutes an "other paper" within the meaning of section 1446(b)(3) and triggers the thirty-day removal window from the date of its receipt. CVS, however, did not seek removal until months after the 30-day period elapsed.

CVS nevertheless argues that the triggering document was not the initial disclosures but the November 6, 2025 Answers to Requests for Admissions, in which Plaintiff admitted the amount in controversy exceeded $75,000. CVS relies on the undisputed rule that answers to requests for admissions can constitute "other paper." *See Wilson,* 888 F.2d at 781. That rule is certainly correct as we point out above. But it is limited by a modifier that CVS's argument omits.

Section 1446(b)(3) does not ask which of a defendant's papers was the clearest or most convenient confirmation of removability. It instead looks to a paper "from which it may *first* be ascertained" that the case is removable. 28 U.S.C. § 1446(b)(3) (emphasis added). The word "first" is significant. It means that, once a plaintiff has served a document from which removability can be ascertained, the clock begins even if that becomes even more clear later. The statute creates a single trigger; it does not allow the trigger to be pulled twice.

The admissions were not the first paper from which removability could be ascertained. They were the fourth. The civil cover sheet (March 13, 2025), the

complaint served with it (March 19, 2025), and the initial disclosures (May 19, 2025) each preceded the admissions by months. The admissions did not resolve any lingering uncertainty CVS might have harbored. That uncertainty was first resolved when the initial disclosures were received, which expressed a detailed figure on top of the $100,000 range cited in the civil cover sheet. In other words, the time for removal was not triggered by the admissions responses; by then, the time for removal had long since passed.

Plus, the reasons CVS cites are also quite illusory. CVS says that only the admissions responses, served after production of documents and medical records in the case, could be relied upon to determine the actual amount in controversy. Yet, no such rule was applied in many other cases where admissions responses by themselves were sufficient to trigger the removal clock. *See, e.g., Lambertson v. Go Fit, LLC*, 918 F. Supp. 2d 1283, 1286 (S.D. Fla. 2013) ("This Court finds that the proper triggering document in this case was Plaintiff's response to Defendant's request for admissions. Defendant removed this action twelve days after receiving that confirmation that Plaintiff sought above $75,000.00 in damages. This Court is satisfied that Defendant effectuated a timely removal of this action."). Judge Moore in that case didn't also ask if there were medical records available to verify the response, any more than CVS needed to do here. The response on its face was enough precisely because, as the Eleventh Circuit explained in *Burns*, an attorney's certification is trustworthy, 31 F.3d at 1095 ("We will further presume that plaintiff's counsel understands that, because federal removal jurisdiction is in part determined by the amount of damages

a plaintiff seeks, the counsel's choices and representations about damages have important legal consequences and, therefore, raise significant ethical implications for a court officer.").

Indeed, a quick review of the many cases where admissions responses by themselves were deemed sufficient to trigger the right to remove make no mention of verification or documentary backup. The response, just like the complaint itself, is enough on its face if the threshold amount is explicitly stated. *See, e.g., Eubanks v. Hall*, No. 5:22-CV-411-JSM-PRL, 2022 WL 5240776, at *2 (M.D. Fla. Oct. 6, 2022) ("It is axiomatic that Plaintiff's responses to Request for Admissions may be considered an 'other paper' for removal purposes") (relying on response to admissions request alone to find that amount in controversy first established to trigger timely removal); *see also Jennings v. Powermatic*, No. 3:14-CV-250-J-32JRK, 2014 WL 2003116, at *3 (M.D. Fla. May 15, 2014) (holding that response to a request for admission that admitted plaintiff's damages exceeded $75,000 was an "other paper" for removal purposes); *Sibilia v. Makita Corp.*, 782 F. Supp. 2d 1329, 1330 (M.D. Fla. 2010); *Lasarso v. Best Buy Stores, L.P.*, No. 808-CV-1420-T-30TGW, 2008 WL 3254210, at *2 (M.D. Fla. Aug. 7, 2008).

In short, CVS cannot manufacture a new section 1446(b)(3) trigger by waiting for a later, more explicit document to arrive. The statutory design is deliberate: it gives defendants a finite window from the moment removability becomes ascertainable, and it places the risk of inaction on the defendant. A defendant who ignores an earlier sufficient trigger and waits for a better one has missed its window.

Nothing in section 1446(b)(3) rewards that approach especially where removal statutes are supposed to be strictly construed and all ambiguities should be resolved in favor of remand. *Whitt,* 147 F.3d at 1329; *Burns,* 31 F.3d at 1095.

The consequences of CVS's contrary rule are dire, because they illuminate why the rule cannot be correct. If a defendant could freely disregard an earlier "other paper" in favor of a later, more explicit one, defendants would have no incentive to act on disclosures, demand letters, or interrogatory responses that exceed the threshold. They could simply wait, for an admission, for a deposition, even for a summary judgment response many months later, until they found the most convenient occasion to remove. The plaintiff's chosen forum would remain in suspense indefinitely, subject to removal on the defendant's unilateral schedule rather than Congress's statute. Congress did not enact § 1446(b)(3) with that result in mind. The word "first" forecloses it.

Though the parties do not dispute that the amount in controversy now exceeds $75,000, the Court confirms the analysis for purposes of completeness. Under Eleventh Circuit precedent, a court determining whether the amount in controversy is satisfied is not bound by the plaintiff's characterization of claims and may make reasonable deductions, inferences, or extrapolations from the pleadings. *See also Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061–62 (11th Cir. 2010). The court "need not suspend reality or shelve common sense." *Id.* at 1062. The initial disclosures identified $143,525.20 in total claimed damages. That figure is specific, itemized, and attorney-certified. It exceeds the $75,000 threshold by $68,525.20. The amount in

controversy requirement is satisfied. Whether the applicable standard is preponderance of the evidence, *Lowery*, 483 F.3d at 1209, or the more lenient "sufficient information to easily determine" standard from other circuits, like *Romulus*, 770 F.3d at 75, the result is the same. The amount in controversy is not in doubt; only the timeliness of removal is.

In short, the chronology is undisputed. CVS received Plaintiff's damage disclosures on May 19, 2025. Under section 1446(b)(3), CVS's deadline to remove was thirty days later: June 18, 2025. CVS, however, filed its Notice of Removal on December 5, 2025 – 170 days late.

This untimeliness is a procedural defect that requires remand. 28 U.S.C. § 1447(c). No exception applies. This is not a case in which the initial complaint was ambiguous about removability and a document only served 170 days later resolved the ambiguity for the first time. This is a case in which a specific, attorney-certified damages figure of $143,525.20 was served on CVS in May 2025, and CVS waited until December 2025 to act on it. Remand is required.

### E.      *The Request for Attorneys' Fees is Denied*

Plaintiff also requests attorney's fees and costs under 28 U.S.C. § 1447(c). An award of fees under § 1447(c) is appropriate only when "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Absent that, fees should not be awarded even when remand is granted. *Id.* The standard is objective, not outcome-determinative. The question is not whether a defendant was wrong but whether its position was frivolous.

A removing party whose arguments are tethered to genuine doctrinal uncertainty retains an objectively reasonable basis even if the court ultimately rejects those arguments. *Flores v. Se. Mechanical Contractors, LLC*, 2010 WL 11597926, at *3 (S.D. Fla. 2010).

We should follow in this regard the *Roe/Pretka* common-sense principle and recognize that courts may look past imprecise pleadings to determine whether the jurisdictional amount is met. The corollary of that principle, that a forward-looking estimate expressed as a range might, in some cases, be viewed as insufficiently precise to constitute an "unambiguous" § 1446(b)(3) trigger, provided CVS with some colorable, if ultimately unpersuasive, legal theory. The presence of a future surgical estimate expressed as a range ($54,500 to $125,200), rather than a single number, gave CVS something to argue. Weak as this argument was, it was not frivolous.

Accordingly, the request for fees is denied. The Court reaches this conclusion with some reluctance. The 170-day gap between the disclosures and CVS's removal suggests a strategic election rather than a good-faith legal assessment. The Court notes for future cases that a defendant who receives specific, itemized damages disclosures exceeding the jurisdictional threshold, and who waits months to remove while accumulating more favorable admissions, treads on territory where the objectively-reasonable-basis defense begins to erode. For now, the fees analysis will come out differently.

## III.  CONCLUSION

The removal statute gives a defendant thirty days to act once removability can be ascertained. That window opened on May 19, 2025, when Plaintiff served his Initial Disclosures identifying $143,525.20 in total claimed damages. It closed on June 18, 2025. CVS's December 5, 2025 Notice of Removal arrived 170 days too late. Accordingly, the motion to remand [D.E. 7] is **GRANTED**.

The Court will stay this Order for fourteen days in the event that any party seeks to appeal this non-dispositive Order to the District Judge under Rule 4, S.D. Fla. Local Atty. R., and Fed. R. Civ. P. 72.  There is clear authority that a motion to remand is not a dispositive motion under 28 U.S.C. §  636, but in an abundance of caution the Court will direct that no remand take place until the time for appeal has passed. The Clerk shall thus not remand the action until this stay period has elapsed. If no appeal is filed within that time period, the Clerk will be directed to remand the action to the Eleventh Judicial Circuit in and for Miami-Dade County.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of April, 2026.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge